Good morning, Your Honors. May it please the Court, my name is Harini Ragupathy from the Federal Defenders of San Diego on behalf of the appellant Ms. Estefani Zaragoza. The government allowed video of the port of entry from the morning of Ms. Zaragoza's arrest to be erased, even though Ms. Zaragoza told agents during her post-arrest interrogation about her efforts to withdraw from the crime and attract the attention of law enforcement while waiting in the pedestrian line, and even though defense counsel specifically requested preservation of the video just five days later. The government's destruction of the video in the face of knowing its potential exculpatory value violates Ms. Zaragoza's Fifth and Sixth Amendment rights to due process, to access evidence, and to present a defense. This Court should therefore vacate her conviction with direction to dismiss the indictment. I had two questions at the beginning. Do you agree bad faith is required? I do, Your Honor. Under Arizona v. Youngblood, because... All right. Yes, you do. All right. Secondly, do you agree clear error review is applicable? That does seem to be the standard of review, yes. All right. Thank you. Judge Reiner, could I interject a question, please, just to clarify? On the element of bad faith under Youngblood, is it sufficient or could it be sufficient to show a reckless disregard of the rights of a criminal accused, or does it require subjective bad faith rather than reckless disregard of rights? I believe it has to be more than just negligence and more than just recklessness. I think the case United States v. Flyer says that, but I don't think there's a clear indication whether the knowledge test of bad faith is an objective test or a subjective test. In Westerdahl, this court said it was explicitly not deciding whether bad faith was an objective or subjective test, and so that's an open question that this court could resolve, and our position would be that it should be an objective test. But even if it were subjective, I think there's evidence in the record to show that both Agent Alvarado, who was the case agent, as well as the United States Attorney's Office had subjective knowledge that the video here was exculpatory. Well, do we have to look at each of them, or do we look at them together to determine whether or not there's either objective or subjective bad faith? I believe this court looks at the government as a whole, and so here there's two relevant governmental actors. There was Agent Alvarado, and then there was the United States Attorney's Office, and I think even looking at both of those actors independently, they had knowledge of the exculpatory value of the evidence before it was lost. First, Ms. Zaragoza told Agent Alvarado during her post-arrest interrogation that she essentially smuggled the drugs under duress. Agent Alvarado also had independent objective evidence apart from that that the video might contain exculpatory evidence. The one piece of investigation she did do was to confirm that Karen, who was the person traveling with Ms. Zaragoza, actually crossed the border shortly after Ms. Zaragoza was arrested. That suggested that Ms. Zaragoza's duress story had some ring of truth and that it would be important to get the video to see if other aspects of her account would play out. And then the United States Attorney's Office also had direct notice from the letter that defense counsel sent just five days after Ms. Zaragoza was arrested, specifically requesting preservation. Would we have to link those two together to find subjective bad faith? I don't think it's necessary to link those two. I think independently the United States Attorney's Office had knowledge because it had the DVD of Ms. Zaragoza's post-arrest statement in its files. Agent Alvarado handed that over to the United States Attorney's Office. So at the very least the government had constructive knowledge of the contents of her post-arrest statement and knew that video would be important to corroborate the story that she was giving about her duress. What do we know about this fast-track offer that was made by the government right after the arrest? We know that the fast-track offer was extended, I believe it was extended several weeks after, and I'm just getting my timeline out, after Ms. Zaragoza was arrested. But defense counsel sent the initial discovery letter before the fast-track offer was even given. It was five days after Ms. Zaragoza's arrest. Is that a form letter? It is a form letter. It's a routine letter that's sent, I believe, in all cases or most cases in the Southern District of California. And there was no indication during the time that this discovery letter was sent that Ms. Zaragoza was going to settle or that the case was virtually settled as the government claimed it was. The letter was sent, again, in the very incipient stages of the case, just five days after she was arrested. And so there's no indication that the government was somehow absolved of its duty to preserve this evidence because Ms. Zaragoza was going to plead guilty. The form letter asks for the preservation of all video, I think, among all the other things that they ask to be preserved. This may not be an unusual request. That is, it may be that in other cases the video of the crossing may be relevant. Do you have any information as to whether there have been other cases in which the video has been either preserved or not preserved? I'm only aware of one other case, and the name is slipping my mind, in which it was an attempted reentry case. And so it was important to have the video to see if the client was under official restraint, and it turned out that the video was retained. I don't have a lot of knowledge about whether. We know from the record that when the government makes a request to ICE to preserve the videos or to Homeland Security to preserve the videos, the videos are preserved. So when that request is made, they're honored. You did make a specific request later where you identified what it was you were really interested in. And at that point the government immediately, well, I shouldn't say immediately, within a reasonable time conveyed the request to the ICE officers. Correct. There was a second follow-up letter which requested the video, and by that point once the government acted on that letter the video had already been destroyed. But there was also the initial letter which requested specifically preservation of the port of entry video surveillance. Would Alvarez have been able herself to preserve the video even without the request? Not to my knowledge, no. It's the government that has the power to preserve the video. Independently, without going through the government, she wouldn't be able to do it on her own. I believe that's a question Your Honor is asking. I am, because if she knew that the video was being destroyed in the ordinary course and allowed it to be destroyed on her own, that would be different than if she didn't have that power. No, she didn't have that power. The government was the sole... But she is the government, isn't she? Oh, I'm sorry, I thought you were meaning the client. No, no, no, I meant Alvarez. I meant Alvarado. Isn't that her name, Alvarado? Yeah, Agent Alvarado, yes. I apologize, I made that mistake. Could Agent Alvarado, on her own, after talking to your client, have preserved the video? Yes, there was testimony at the evidentiary hearing that a special case agent has the authority to preserve video, and that would be well within her province as the case agent to do so. If the Court has no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. Thank you very much. Good morning, Your Honor. Randy Jones on behalf of the appellee in the United States. First of all, the District Court did not clearly err in finding that there was no bad faith in this case. And as the facts clearly show, there was no bad faith in this case. Counsel, the District Court didn't even consider the letter requesting preservation. It did consider Ms. Alvarado's action and held that that was not bad faith. I believe that in support of the motion to dismiss, the Defense Counsel did in fact send the earlier letter of December 28th to the Court as an exhibit. So the Court had that. It's just reading the Court's decision. Maybe the Court said something orally, but in the Court's decision, the Judge did not consider the letter. Well, I think when the Court, if I may just take a look at the order, I believe in the timeline. Yes, in the timeline, the Court said on December 28th, Counsel for the Defendant sent a letter to the Assistant U.S. Attorney, United States Attorney, representing the government, requesting that the government preserve exculpatory evidence, including any relevant video evidence. Yes, but the Court's conclusion on the last page, page 9 of the decision, says what Judge Reinhart just said. The Court concludes that the exculpatory value of the video of the pedestrian line prior to defendant's arrest was not readily apparent to Agent Alvarado and concentrates solely on Agent Alvarado. So let me ask you a question. Do you agree with counsel that we should look at the government as a whole, both the U.S. Attorney's Office and the agent when we are looking at bad faith? Yes, I think we don't have any problems with that. I think that's usually how it's done, that we're considered as a whole. And in this case, you have to consider everybody in the office. I only came into the case after the plea agreement had failed, about a month and a half after she was arrested. We have a grand jury unit, and my colleague was the one who was negotiating with the defense attorney at the time. And if I could just go over the timeline real briefly on that. The defendant was arrested on the 22nd of December, 2011. Five days later, on the 27th, the defendant agreed to waive time pursuant to our fast track policy. The day later, on the 28th, the defendant sent a letter, this letter that we just mentioned, requesting the preservation of videos and other evidence, but it wasn't specific as to the port of entry video. On the 30th of December, our office forwarded... What other videos would there have been? Typically, when we look at videos, there's usually a passenger type situation where they're in a car, things of that nature. Those are the typical requests we get for preservation of videos, or if there are any videos that the CBP officers did to tear apart the car, those types of videos. In this case, Agent Alvarado was clear that she just didn't even think that it was important to go and get the video in this case, because even though the defendant said that she made motions, if you look at the video of the post-arrest statement, all she was doing was closing her jacket and maybe putting her hand in. There was nothing that was really obvious. She said she threw her passport down. She was trying to make herself obvious. She was trying to make the agents aware that she was being forced to do this. In fact, she had been there earlier that morning and gotten out of line, and they put the drugs back on her and put her back into line. And all of this would have been captured, or at least we think it would have been, and we'll never know because it's been destroyed, but it would all have been captured on the video that they were requesting be preserved and that the agent knew would be destroyed. So if you're looking at the government as a whole, how can you really take the position that they didn't know, I mean, that they didn't meet the bad faith test, which is knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed? They did know that. The government certainly knew that. Well, I think that the district court said it best when it says that she didn't know the apparent exculpatory value of this. She said that she didn't think about getting the port video in light of all of the statements that the defendant was saying during the post-arrest statement. She was claiming duress, but the facts were that she had been down there with these people for four months. She had left Mexico and gone back to Bell, California for a couple of weeks, and three days before she came back down because she wanted to party with these people. It sounds to me like she's weighing the evidence and putting herself as judge and jury to determine whether the evidence would be available. The evidence could have proved guilt as well as innocence in this case. It's obviously relevant to the case, and she allowed it to be destroyed, even after the defense had asked for it to be preserved.  Secondly, it wasn't after the defense had asked for it to be preserved, but the defense sent a form letter requesting all discovery, including videos. Immediately, they went into negotiations. The defense and my colleague went into negotiations on the plea and reached a plea agreement fairly quickly, within about two weeks. On the 9th of January, there was communication that they had a plea. At that point, the government doesn't usually continue to hold evidence or things of that nature once there's a plea agreement. But wouldn't this have been relevant to 3553 factors, as well as innocence or guilt, to show that even if she didn't have a coercion defense that might result in an acquittal, wouldn't that be the type of evidence that a sentencing, a defendant, would want to present to show, I did this, but I was really having trouble doing this, I was reluctant, all the rest of it that goes into culpability. So it would be relevant to both sentencing issues and innocence or guilt. And she has the opportunity to present that at sentencing and at trial. She could testify to that effect. I understand that as best as I can. You're forcing her to testify if you don't allow her to have the independent evidence that might support her defense. No, I understand that. I don't want to make light of the situation at all, and please forgive me for that. What we're saying is that at the time the video was recorded over in the normal course of CBP within 30 to 45 days, the government and the defense had entered into a plea agreement. It was only after the plea agreement failed on the 13th of February that we realized, and then the case was indicted and I received it on the 16th of February, and shortly thereafter the defense made a more specific request for the court videos. At that time, that's when we realized that it had been recorded over in the normal due course. Agent Alvarado, you know, in her testimony at the hearing, indicated she just didn't think about preserving that evidence. Is that wrong or right? In hindsight, perhaps she should have done more police work and went and immediately looked at the video to see if it corroborated what the defendant was testifying to or was stating in her post-arrest statement, but she felt that considering all the circumstances, considering the post-arrest statement, that she just didn't feel that it was necessary to preserve that piece of evidence. Counsel, Judge Gould, if I could interject a question, please. I think I understand what she was saying, but the part of the case that bothers me is the destruction of the evidence after there's a specific defense request for it. And I hear the argument that, well, there had been a plea agreement reached, but does the government have a duty to preserve exculpatory evidence even after some tentative plea agreement until it's finalized in a court? Well, typically, first of all, there's no way of knowing if this was exculpatory evidence or not. Well, it may or may not be, but she asked that it all be preserved. She asked that any videos, but not specifically the port of entry video, be preserved. And whether we have an obligation to continue to preserve evidence after we've reached a plea agreement, I'm not sure if we do or not. I mean, typically what happens is that once we have a plea—I'm sorry? No, I understand. So you're saying you're not aware of any policy that the government would preserve evidence after a tentative plea agreement? No, I'm not aware of that. From my perspective as a judge, I would say that it seems to me they should. And I guess I have the more general question about the Youngblood framework, which is what I asked an appellant's lawyer. Can bad faith be inferred from a reckless disregard of the rights of a criminal defendant? Because it seems that destroying a video they asked for is in reckless disregard of their rights. I don't believe that it can be inferred. I think it has to be bad faith. I think it has to be a situation where the government is trying to obtain some sort of strategic advantage that they actually knew about the exculpatory value or potentially exculpatory value of the evidence and destroyed it anyway, and that's not the case here. I know there's a case that says negligence is not sufficient. I can't remember offhand whether it said negligence or something is not sufficient. Did it deal with recklessness in that case, or do you know of a case? I remember reading a case. I'm not sure if it did or not deal with recklessness. But again, bad faith is a higher standard than reckless disregard or negligence. I think in this case you have to impugn some sort of bad behavioral pattern. Do you know of a case that discusses whether negligence or recklessness or reckless disregard constitutes or can constitute bad faith? I'm looking here. I don't believe it. I don't have any case to say that. I apologize for that. I do know that the Drench case dealt with showing bad faith that the defendant must show evidence, present evidence showing that the government departed from its usual procedures or that it purposely destroyed the evidence to gain an unfair advantage at trial. And we acted in our normal procedure. Recordings are recorded over within between 30 to 45 days unless there's an order to preserve it. And it was not purposely recorded over to gain any sort of advantage at trial. But the Sevilla case, which is a 2013 case from this court, describes bad faith, the presence or absence of which turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed. And the judge here found that this video was potentially useful evidence. That's a finding by this very judge. And again, we get back to the judge's analysis of it was solely on Ms. Alvarado, Agent Alvarado. And it didn't include the U.S. Attorney's Office, as you, I think, very candidly concede, should have been included in that analysis. So the government did know that this video had the potential to either exculpate her or show that she was perhaps not telling the truth about it or to have been useful at the time of sentencing, plea deal or no plea deal. So I don't see how this passes the test one way or the other. Well, again, to get it up to bad faith, it doesn't get up to bad faith. And even if the court were to find that there was bad faith, the remedy is not dismissal of the indictment. The remedy would be to send it back for the court to hear it and have the opportunity for the defendant to withdraw her plea agreement or plea and we go forward to trial. But it's clearly not... Without evidence to prove her case. I mean, you're making her testify. You're really forcing her to waive her Fifth Amendment right at that point, it seems to me. What case says that the remedy is not dismissal of the indictment but to go to trial? Well, I was looking at the case that was cited, U.S. v. Sevilla, where it talked about the destruction of evidence rising to the level of due process, the government must act in bad faith, and the missing evidence is such a nature that the defendant would be unable to obtain comparable evidence by reasonable means. And in that case, although it didn't deal with dismissal per se, it was a situation where the judge or the district court did not provide a remedial instruction. In this particular case, the district court, Judge Hayes, said that if the defendant wanted to go to trial, the court would consider giving a remedial instruction to that effect. And so I think... I guess the point that I'm trying to make is... Counsel, how can a remedial instruction recreate destroyed evidence? Well, I guess what I'm trying to say is that in order for it to rise to bad faith, there has to be some sort of purposeful destruction on behalf of the government. Well, that's a different question. The question is, if it's bad faith, could the destruction of the evidence in bad faith be cured by telling the jury the government destroyed evidence which would have shown that the defendant did what she said she did? Yes, I think it could be. And is there any case that says that that is an adequate remedy when the government destroys evidence in bad faith? Well, I haven't found one that... Well, I guess the closest one is the U.S. v. Sevilla case that was decided in 2013, where the defense had requested a dismissal of the indictment. Or in this case, an instruction. And this court indicated that it was that the... Actually, it says, I'm reading here, this court bases the denial of Sevilla's claim on a lack of bad faith. Bad faith is a wrong legal standard for remedial jury instruction. So I don't have a case... What you're suggesting is that if we were to find bad faith here based on the record, that we should remand it to the trial judge, to the district judge, to hold proceedings consistent with that finding and maybe leave it to him whether to dismiss the indictment or see if there's some other way around it. I mean, I think the judges already indicated, the district court has already indicated that there was no... that the government did not store this record or this video in bad faith. Now, I'm saying what if we disagree with that and reverse on that basis? I think what you're arguing is that that needn't result in the dismissal of the indictment by order of this court, but give the district court a shot to determine what the remedy would be. Yes, at best. Yes, I would not like to have you out here. To issue an order to dismiss the indictment, yes. Counsel, let me clarify something procedural. I might have had this wrong in my mind, but I thought she moved to dismiss the indictment that that was denied by the court and that then she entered a conditional guilty plea. That's correct. If the case is here on a conditional guilty plea and she reserved the issue to challenge her motion to dismiss the indictment, isn't that what we should be deciding if there's bad faith sufficient to dismiss the indictment? Well, she can always, if this court doesn't dismiss the indictment, it could remand the case, I believe, remand the case back to the district court for the district court to take another look at this, including whether or not the government, because I think we've talked about the government not being considered the United States Attorney's Office, have the court look at it in that regard and then decide whether or not there was bad faith. But I think the district court has always indicated that the evidence was not recorded over in bad faith. I mean, I think we're trying to... I know what the district court did. That's why they have a court of appeals. I understand. I think the issue that really needs to be here is whether or not there was bad faith. And again, the bad faith is based on whether or not there was any purposeful intent on the government's part, whether it's Agent Alvarado or my colleague at the U.S. Attorney's Office, to know that there was some exculpatory value to the court video. At this time, I don't even think the defense attorney at that time even knew what the specific issue was with respect to her post-arrest statement. And so there was no purposeful advantage gained here, in this case, by the government. The government responded after the plea agreement had failed and responded in a reasonable time to make sure that we could preserve the video after the court had ordered it. And by that time, it had been recorded over in due course. And that's negligence at best, but it clearly does not rise to the issue of bad faith on the part of Agent Alvarado or anyone in my office or associated with the government. All right. Thank you, Kevin. All right. Thank you, Your Honor. I just wanted to make a few points first about the remedy. United States v. Cooper is clear that for these types of claims about bad faith destruction of evidence, the remedy is to reverse the conviction with motions to dismiss the indictment. Cooper similarly addresses the value of a jury instruction, and it says, quote, the government's proposed jury instruction pales in comparison to the potential value of the actual evidence because the actual evidence would be powerful, weighty evidence of innocence. So I think that's applicable language in this case. And then regarding clear error here, I think Your Honor has pointed out that the district court below didn't consider the defense counsel's a discovery letter. The other thing that was missing from the analysis was any analysis of Agent Alvarado's misleading omissions from both the affidavit in support of the complaint as well as the initial report of investigation. In both of those documents, she only communicated the inculpatory aspects of the case and fully omitted any reference to the potential exculpatory aspects of the case. And so her misleading omissions I think are also important in showing that this was surpassing reckless or negligent conduct. It was actually bad faith. It evinced an intent to hide exculpatory information from the magistrate judge, from the U.S. Attorney's Office, and from the defense counsel. Thank you. Let me ask you one more question. Do you agree that recklessness is not sufficient? I believe United States v. Fyre says that negligence or recklessness is not enough. All right. Secondly, in the Cooper case that you mentioned, was that a decision, in your opinion, that said as a general principle bad faith requires dismissal of the indictment or vacation of the conviction? Or is that a case that says in light of the centrality of this evidence to the finding of guilt, the inability to portray that in any other way, the indictment should be dismissed? I believe it said that the general remedy is to dismiss the indictment. I think in that case the procedural posture was virtually identical to here where the defendant moved to dismiss the indictment below, and that was the remedy the defendant was seeking in the district court level. And that was the decision, the order, that the Court of Appeals was reviewing. And I think it said as a general matter that the remedy would be to dismiss the indictment. That's my reading of the case. This evidence relates to part of a potential defense. I think there are three elements to the defense of coercion, and it might relate indirectly to the first element of was there coercion at all. She did tell the government agent something about potential coercion, but it wasn't a very strong case of coercion. As the U.S. attorneys pointed out, the basic course of her conduct did not suggest much coercion. But if it related to simply one element of the defense, would that still be enough to require dismissal of the indictment? I believe so. I think the evidence here would be central to showing that she attempted to withdraw, which is relevant for a duress defense, that she also had, I think, a reasonable fear that the threats would be carried out. If the video captured her demeanor or her facial expressions, it could show that element. And I think it could also show whether there was, in fact, a threat. It would be probative on that point, too, because the degree to which Karen, who was the person accompanying her, was sort of closely monitoring her, if there was any sort of physical altercations between the two of them in line, that would be probative, I think, also of the nature of the threat. And I think at trial, the question the jury would have to resolve is whether it believed Ms. Zaragoza's account that she actually acted under duress or it believed the government story that she concocted the duress after the fact. And the video would be the only contemporaneous evidence she could present of her actions while she was waiting in the pedestrian line on that matter. It sounds to me like the luckiest thing that ever happened to her is that they destroyed that video. Perhaps. Right. Okay. All right. Thank you very much. Thank you. Did I reserve a minute? No. Oh, I didn't. No, you couldn't? Couldn't. I was just wondering if I had a critical response. All right. Thank you. Thank you. Thank you both very much. I appreciate the argument. Thank you. This argument is under submission.
judges: Gettleman, Reinhardt, Gould